Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured, with Key Risk Management Services as the servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The issue for determination is whether plaintiff has sustained an injury by accident, and if so, to what benefits may she be entitled under the Act.
5. The parties stipulated the following into the record:
 a. Medical Records of Johnson Neurological Clinic, Inc., eleven pages;
b. Lexington Memorial Hospital, Inc., three pages;
 c. Medical Records of Lexington Orthopedic Clinic of J. Simmons Riggan, M.D., three pages;
 d. Physician Report of Treatment for Return to Work, six pages;
e. PPG Incident Investigation Form, one page;
f. PPG Medical Evaluation Form, one page;
g. PPG Voluntary Leave of Absence, one page;
 h. 20 May 1997 Denial of Claim letter from Key Risk, one page; and
i. Partners Health Plan, two pages.
6. Plaintiff's average weekly wage was $699.16, which yields a weekly compensation rate of $466.23, based upon the Form 22 Wage Chart.
7. The issue for determination is whether plaintiff sustained an injury by accident on 23 April 1997, and if so, to what benefits may she be entitled. It is expressly agreed that plaintiff is not seeking benefits for right carpal tunnel syndrome.
 ***********
Based upon all of the competent evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a thirty-eight year old female high school graduate, who began working with the defendant-employer on 12 June 1978. She is five feet one inch in height. She had almost perfect attendance except for the time she missed because of pain in her hands.
2. After one year of conservative treatment for carpal tunnel syndrome of the right hand, plaintiff sought treatment from Dr. Victoria Neave of Johnson Neurological Clinic on 20 May 1991. Based upon plaintiff's repetitive use of her hands at work, Dr. Neave causally related this condition to plaintiff's job. However, after defendant denied this claim, plaintiff did not pursue the claim.
3. Plaintiff underwent a right carpal tunnel release on 22 May 1991. Significant nerve compression was found. On 5 July 1991, Dr. Neave found that plaintiff had reached maximum medical improvement and retained a five percent permanent partial impairment to the right hand.
4. Plaintiff returned to work following this treatment as a sliver handler, wherein she put cardboard tubes on the machine, cut bands, doffed 14 positions, and lifted wound tubes of glass weighing 30 pounds into trucks.
5. On 23 April 1997, at approximately 9:00 a.m., plaintiff lifted a "call down" package to the top adapter of the truck. This adapter was approximately six feet high. The truck did not have wheel locks and, as plaintiff extended to reach the top, the truck rolled or tilted, causing her to hyperextend and experience a pop in the left wrist and pain on both elbows. She felt sick to her stomach after this incident occurred. This incident of hyperextending and experiencing a pop in the left wrist and pain in both elbows when the truck rolled or tilted constitutes an injury by accident.
6. Plaintiff reported this incident to Harold Burns, her supervisor, and requested to be relieved so she could go see the nurse. However, she was not permitted to see the nurse, Diane Swicegood, R.N., until approximately 3:30 p.m. Nurse Swicegood contacted Dr. H. G. Strader, the plant doctor, who ordered Darvocet N and Lodine. Dr. Strader restricted plaintiff to no lifting over two pounds and no strenuous gripping. He authorized plaintiff to return to Dr. Neave's office, and an appointment was scheduled for her.
7. Defendant had placed tar paper on the floor two to three days before the date of the injury to help prevent the trucks from rolling. However, coworkers would roll up the tar paper because it would "eat up" their shoes. Plaintiff reported the tar paper removal from her area in order to have the paper reinstalled.
8. On 7 May 1997, plaintiff was seen by Dr. Leanne Willis of Johnson Neurological, where she related a history of left hand numbness for approximately one year. She reported that her symptoms became worse on 23 April 1997 when she lifted a 30 pound box and felt instantaneous pain in both elbows, radiating to hands and wrists. Dr. Willis suspected recurrence of right carpal tunnel syndrome and new left carpal tunnel syndrome. Dr. Willis encouraged plaintiff to continue using anti-inflammatory medication and wearing braces. Dr. Willis ordered work restrictions of lifting no more than five pounds and no repetitive wrist motions. Plaintiff took a week of vacation leave to rest her hand.
9. On 26 May 1997, Dr. Neave performed left carpal tunnel release surgery, during which she found the nerve was not compressed, but rather that plaintiff had the flexor retinaculum almost redundant and partially torn, probably from trauma.
10. Plaintiff returned to work on 27 May 1997.
11. On 10 June 1997, Dr. Neave restricted plaintiff to no left handed work.
12. On 18 June 1997, plaintiff was referred to Dr. J. Simmons Riggan for an evaluation of her elbows. He diagnosed her with bilateral epicondylitis, which he found was exacerbated by a lot of heavy lifting at work. Dr. Riggan injected both elbows with Celestone and Lidocaine.
13. On 30 June 1997, Dr. Neave recommended to Charlie Clark of defendant-employer that plaintiff be placed on permanent light duty.
14. Plaintiff took a voluntary leave of absence from 29 June 1997 through 26 July 1997, with concurrence of Dr. Neave. Plaintiff returned to work on 27 July 1997.
15. Plaintiff took leave from 3 August 1997 to 3 September 1997. She returned to work on 10 September 1997, and was assigned to operate a tow motor, answer the phone, and perform general office duties.
16. In November of 1997, after another injection in the elbows, Dr. Riggan recommended that plaintiff avoid repetitive flexion and extension of elbows.
17. On 20 January 1998, Dr. Strader recommended restrictions of no lifting over five pounds, no repetitive strenuous gripping with either hand, and specifically, no glass winding.
18. Dr. Neave recommended a functional capacity evaluation to evaluate plaintiff for permanent partial disability, but her health plan refused to authorize it; therefore, there was no rating.
19. On 20 January 1998, plaintiff was demoted to sliver handler, in which position she earns less than her pre-injury wage.
20. The competent medical evidence in the record supports a finding that plaintiff's left tendon injury and bilateral epicondylitis resulted from an injury by accident during the course of plaintiff's employment with defendant-employer.
21. At the time of the hearing before the Deputy Commissioner, plaintiff had not reached maximum medical improvement.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 23 April 1997, plaintiff sustained an injury by accident arising out of and in the course of her employment when she injured her left wrist and both elbows when the adaptor truck rolled or tilted. G.S. § 97-2 (6).
2. Plaintiff is entitled to temporary total disability for the periods from one week in May of 1997, 29 June 1997 through 26 July 1996, and for 3 August 1997 to 9 September 1997, at the rate of $466.23 per week. G.S. § 97-29.
3. Plaintiff is entitled to temporary partial disability from 20 January 1998 until her post-injury wage meets or exceeds pre-injury wage, at two-thirds the difference between her pre-injury and post-injury wage, not to exceed 300 weeks. G.S. § 97-30.
4. Plaintiff is entitled to have defendant pay for medical expenses incurred, or to be incurred, as may be necessary to effect a cure, provide relief or lessen plaintiff's period of disability, including the functional capacity evaluation and a return examination by Dr. Neave for purposes of obtaining a permanent partial impairment rating. G.S. § 97-2(19), G.S. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay temporary total disability compensation to plaintiff at the rate of $466.23 per week for the following: one week in May of 1997, from 29 June 1997 through 26 July 1997, and from 3 August 1997 through 9 September 1997. Said compensation has accrued and shall be paid in a lump sum.
2. Defendant shall pay temporary partial disability compensation to plaintiff at the rate of two-thirds of the difference between her pre-injury and post-injury wage from the period from 20 January 1998 until such time as her wage meets the pre-injury wage, in accordance with G.S. § 97-30.
3. Defendant shall pay for medical expenses incurred, or to be incurred, which may be necessary to effect a cure, provide relief, or lessen her disability.
4. The issue of the amount of permanent partial disability compensation which may be due plaintiff is left open for further hearing if necessary.
5. Defendant shall pay the costs.
 S/ _____________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ _____________ BERNADINE S. BALLANCE COMMISSIONER
S/ _____________ CHRISTOPHER SCOTT COMMISSIONER
RCR:mcl